Brown, *Adm'r*, v. Merrimack River Savings Bank.

67   549
70   358

A by-law of a savings-bank, that it will not be responsible for loss sustained by the payment of a book on presentation when the depositor has not given notice of his book's being lost or stolen, does not relieve the bank from the duty of exercising good faith and due care.

Payment by the bank of the money due on a bank-book presented by an unknown person, without making any inquiry as to his identity, is evidence of negligence.

The owner's negligent loss of the book does not excuse the bank.

Upon the question whether the owner, or some one with whom he was in collusion, had drawn the money to defraud the bank, evidence of the amount of money the owner had at the time of his death, about two months afterwards, was properly admitted.

Assumpsit, for money deposited in the defendant bank by Sale Page, the plaintiff's intestate, and dividends and interest thereon. Trial by jury. Verdict for the plaintiff.

There was evidence tending to show that Sale Page deposited in the defendant bank, October 8, 1889, $200, and signed an agreement to be bound by the by-laws of the bank, and received a deposit-book, in which the rules and by-laws of the bank were printed in conspicuous type, among which by-laws was the following:

"Guard against Fraud in Withdrawing Deposits.

"As the officers of this institution may be unable to identify every depositor transacting business at the bank, the institution will not be responsible for loss sustained when the depositor has not given notice of his book being lost or stolen, if such book be paid in whole or in part on presentation."

That on the 11th day of December, 1890, he made a further deposit of $100, which was entered in his book; that the officers of the bank had no personal acquaintance with him; that it was the custom of the bank to pay deposits to the person presenting the deposit-book and signing the receipt-book, unless something in the conduct or appearance of the person, or the circumstances attending the withdrawal, excited suspicion concerning his identity; that on the 11th day of November, 1891, some person presented the deposit-book of Page to the bank and requested payment; that there was nothing in the request, manner, or appearance of the person that excited the suspicion of the bank teller respecting his identity; that the money was paid to him in good faith by the teller, without making any inquiry concerning his identity, he believing the person to be Sale Page, the owner of the deposit; that the total number of depositors at that time was 6,400, not more than five per cent. of whom were personally

known to the bank officers; that on the morning of the second day after the withdrawal, and immediately after Page discovered his loss, he went to the bank and made inquiry if his deposit had been paid, and complained that his book had been stolen from his trunk where he had left it; that he kept his book and clothing locked in an ordinary trunk in his room, which room was locked while he was absent from it; that the room was in a lodging-house having thirty-five to forty-five lodgers, and open at all hours of the day and night; and that he was employed as a fireman, and worked nights.

1. At the close of the evidence, the defendants moved for a nonsuit, which was denied, and they excepted.

2. A witness testified that one Merryfield, suspected of the theft, was taken to the police station and questioned about it, but was not arrested, and that Page had stated that Merryfield had been in his room. The defendants offered to show that Merryfield kept a disreputable place near where Page roomed. The evidence was excluded, and the defendants excepted.

3. Page lived about two months and a half after the alleged theft. He was a single man, and the evidence tended to show that he was industrious and economical in his habits. The amount paid by the defendants to the person who presented the book was $322.06. Page had deposits in three other savings-banks. There was evidence tending to show that all the bank-books were stolen at the time the one in question was stolen, and that the thief collected the amounts due upon two of them; also that Page had no property except those deposits and his clothing. As bearing on the question whether Page himself, or some one with whom he was in collusion to defraud the defendants, received payment from them (which was one ground of defence), the plaintiff was allowed to introduce evidence, subject to the defendants' exception, tending to show that Page possessed only $15.10 in money and some clothing at the time of his decease; and also that he changed his room and boarding-place, soon after the alleged theft, for room and board at somewhat cheaper rates.

4. The defendants requested the following instructions: If the bank, having no notice of the loss of the book, acted in good faith and with reasonable care, under all the facts and circumstances within their knowledge, in paying this deposit to the person presenting the book, the plaintiff cannot recover. Reasonable care in this case is such care as the bank exercised in the transaction of their usual and ordinary business under the same or similar circumstances.

The plaintiff's intestate, under his contract with the bank, was bound to keep his bank-book in close and careful custody. If he failed to do so, he cannot recover. The kind and degree of care he was bound to exercise are measured by the danger and liability of loss to which his book was exposed.

These instructions were refused, except so far as they were embodied in those given. After stating to the jury that the defendants were bound by the acts and admissions, if any, of their teller, Mr. Emerson, and explaining the legal effect of the by-law above quoted, the following instructions, among others, were given: "Did the bank, or, in other words, did Mr. Emerson, in paying the money to the man who presented the book, exercise reasonable care, that is to say, ordinary care, in discovering whether that man was Sale Page? . . . Ordinary care is such care as persons of average prudence would exercise under the same circumstances. . . . If Mr. Emerson exercised that degree of care, the bank have fulfilled their contract with Sale Page, and are not required to pay the plaintiff again. If he did not exercise such care, the payment was not good, it was not a fulfilment of the bank's contract with Mr. Page, and the bank are still liable to the plaintiff, notwithstanding the payment." There was no exception to the instructions given. The defendants moved to set aside the verdict for errors covered by the foregoing exceptions.

*Burnham, Brown & Warren,* for the plaintiff.

*David Cross* and *Sulloway & Topliff,* for the defendants.

WALLACE, J.     The by-law of the bank, that "the institution will not be responsible for loss sustained when the depositor has not given notice of his book being lost or stolen, if such book be paid in whole or in part on presentation," was a material part of the contract of deposit entered into by the bank and Page when he made his first deposit and signed the agreement to be bound by the by-laws, which were printed in the deposit-book then given him, and governs the rights of the parties. *Heath* v. *Portsmouth Savings Bank,* 46 N. H. 78; *Wall* v. *Provident Inst. for Savings,* 6 Allen 320. It, however, did not relieve the bank from the duty of acting in good faith and with reasonable care. *Kimball* v. *Norton,* 59 N. H. 1; *Wall* v. *Emigrant Industrial Savings Bank,* 64 Hun 249; *Wegner* v. *Second Ward Savings Bank,* 76 Wis. 242; *Allen* v. *Williamsburgh Savings Bank,* 69 N. Y. 314.

The motion for a nonsuit was properly denied, because there was some evidence tending to show negligence on the part of the defendants in not requiring the person who presented the book to identify himself, and in not comparing his signature with that of Page on the bank's books.

The question of contributory negligence is not involved. The plaintiff's loss of his bank-book, whether with or without negligence on his part, was not the legal cause of the injury complained of, but only the occasion of it, or merely an antecedent condition of it. The only question is, whether the defendants exercised ordinary care in paying this money in the way they did.

If they did, they are without fault, and are not liable. If they did not, their negligence is, in law, the sole cause of the plaintiff's loss. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 163. The question was rightfully submitted to the determination of the jury. *Paine* v. *Railway*, 58 N. H. 611, 613. The offer of the defendants to show that Merryfield, who was suspected of the theft of Page's book, kept a disreputable place near where Page roomed, was properly denied, as that evidence does not bear on the question at issue.

As bearing on the claim of the defence that Page himself, or some one with whom he was in collusion to defraud the defendants, drew the money from the bank, the plaintiff was properly allowed to show that Page, at the time of his death, about two months and a half after the money was drawn, possessed but a small amount of money,—the testimony having some tendency to negative this position of the defendants. In regard to the instructions requested by the defendants, the first was properly denied because it limited the duty of the bank to the exercise of ordinary care measured by the "facts and circumstances within their knowledge," instead of the facts and circumstances which by the use of due care they might have known, thus relieving them from the consequences of "culpable ignorance."

The second request was also properly denied, because it asked that the degree of care ordinarily exercised by the defendants in their business should be the standard which should determine the defendants' liability, instead of the degree of care which persons of average prudence exercise. The instructions given in regard to these matters were unobjectionable.

The third and fourth requests were properly refused, since the question of contributory negligence was not involved.

*Exceptions overruled.*

SMITH and CHASE, JJ., did not sit: the others concurred.