Hillsborough, } No. 3306.
March 3, 1942. }

SUSANNA CONNOLLY & a. v. MANCHESTER SAVINGS BANK.

*Saidel, Lemelin, Hurley & Betley* (*Mr. Betley* orally), for the plaintiffs.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the defendant.

MARBLE, J. The plaintiff Susanna Connolly had for many years a savings account in the defendant bank. On February 27, 1933, and on March 3, 1933, her daughter Alice withdrew certain sums from this account, forging her mother's name to the withdrawal slips. Soon after discovering this fact, Mrs. Connolly and her daughter Mildred, the other plaintiff, called at the bank, and Mrs. Connolly then "told the bank clerk not to give any money out of her account to anyone except herself" and Mildred.

According to Mildred's testimony, the passbook had been kept up to that time in a safe in the Connolly home but, from then on, Mrs. Connolly undertook to keep it hidden in various places about the house. Several withdrawals were made by Mrs. Connolly herself between August 18, 1933, and July 5, 1934. From July 28, 1934, to October 16, 1934, sixteen withdrawals were made by Alice on forged slips. On October 30, 1934, the plaintiffs went to the bank and had the account changed to a joint account payable to either "Susanna Connolly or M. Mildred Connolly . . . or survivor, without consent of the other."

On the subject of notice to the bank of the existing situation Mrs. Connolly testified as follows: "Q. Did you tell the bank at any time about these unauthorized withdrawals? A. Yes, I did. Q. How many times? A. I don't remember. Q. You don't remember, but you do remember that you did say something to the bank about it, is that right? A. Yes, I remember that. I said to correct that and not to give any money on my account." When it became time for cross-examination, Mrs. Connolly stated that she "was not physically able to answer questions" and was excused by the court from testifying further.

Mildred testified that "there must have been" something said to the teller on October 30, 1934, about the withdrawals; that she was sure her mother "mentioned withdrawals." But she also testified that her mother "did the talking" and that she "never gave the bank a warning or notice of any kind that $3,400 had been taken out of that bank illegally or improperly by her daughter." The teller with whom the plaintiffs transacted their business stated definitely that no mention of "false withdrawals" was made by either Mrs. Connolly or Mildred on that or on any previous occasion.

On this evidence it could not fairly be found that the bank was adequately informed that money was being withdrawn from Mrs. Connolly's account on forged withdrawal slips. Indeed, there is no

claim that the situation was fully revealed to the bank prior to January 25, 1935.

From December 5, 1934, to January 25, 1935, Alice made six more withdrawals, totaling $1,050. The plaintiffs then disclosed to the bank the true situation. Shortly thereafter, at the defendant's suggestion, the passbook was left at the bank for safe keeping. No further withdrawals were made by Alice. On February 28, 1938, she was committed to the State Hospital for the insane. The present action was brought December 14, 1938.

One of the defendant's by-laws provides that the bank will not be responsible for payments made on presentation of a stolen passbook if the depositor has not notified the bank of the loss or theft of the book. This by-law is identical in phraseology with that construed in the case of *Brown* v. *Bank*, 67 N. H. 549, and it is there held that the by-law does not relieve the bank from the duty of acting in good faith and with reasonable care, and that the depositor's negligent loss of his book does not preclude his recovery of the sum which the bank has negligently paid.

The following issues were submitted to the jury: (1) the negligence of the defendant, (2) the contributory negligence of the plaintiffs, and (3) the extent, if any, to which the plaintiffs participated in the wrongful withdrawal of the money.

The plaintiffs in our opinion are correct in their contention that the evidence conclusively establishes the defendant's negligence.

The jurors were instructed that if they found "that the money was lost as a result of the negligence of the plaintiffs alone" or "on account of the negligence of both the bank and the plaintiffs" their verdict must be for the defendant. This was error. *Brown* v. *Bank, supra.* Defendant's counsel concede this to be true but, relying on their own motion for a directed verdict, contend that the error was harmless because the plaintiffs, having ratified Alice's unlawful acts, "are conclusively estopped from recovery," and because the facts establish an account stated.

Apparently, Alice did not at any time profess to be her mother's agent. Ratification, in the strict sense of the term, is a doctrine of agency, and "Where there is no agency and no attempt to act as agent, there is nothing to which the doctrine of ratification can apply." *Wilson* v. *Atwood*, 81 N. H. 61, 63. See, also, *Vidal* v. *Errol*, 86 N. H. 1, 7, 8.

To establish an account stated there must be an assent, express or implied, to the correctness of the balance struck. It is not essential

that the account shall be stated in any particular form, and the mere statement of a balance due, if accepted as correct, may constitute an account stated. 1 C. J. S. 703, 704. "Usually, it is the creditor who submits a bill or statement, but it may be the debtor. A common application of the principle occurs when a bank renders a statement of account to its customer." 6 Williston & Thompson, Contracts, *s.* 1863. See, also, *Rich* v. *Eldredge*, 42 N. H. 153, 158; *Austin* v. *Ricker*, 61 N. H. 97, 99; Restatement, Contracts, N. H. Annot. *s.* 422.

The relation between Mrs. Connolly and the defendant was sufficiently that of debtor and creditor to permit the application of the rule, for while the general depositors in a savings bank are not creditors of the bank for all purposes, they are creditors in the sense that they may maintain actions at law against the bank for the amount of their deposits. *Cogswell* v. *Bank*, 59 N. H. 43, 45. Moreover, the weight of authority favors the view that "one is not prevented from entering into an account stated with another merely because he is a fiduciary of the latter." 6 Williston & Thompson, Contracts, *s.* 1862A.

On October 30, 1934, when the joint account was established, Mrs. Connolly went to the bank, accompanied by her daughter Mildred. Each knew of the many illegal withdrawals and went there for the express purpose of entering into a new arrangement which they hoped "would take care" of the situation. Mrs. Connolly signed an order requesting that the account be made a joint one, Mildred gave her assent thereto, and the proper notation was made upon the book by one of the defendant's tellers. This constituted a new contract to pay "to either or survivor" the balance then shown upon the passbook. When Mrs. Connolly presented the book to the teller, the last page contained an unbroken list of sixteen withdrawals, known by her to be fraudulent, totaling $3,400, with a balance struck after each item. In her deposition introduced in evidence at the trial she states that one of her reasons for setting up the joint account was because she knew "that Alice had been dipping into that money" and felt that she had had her share. Although she must have known that the bank was undertaking to present true items and true balances, she made no claim that the various fraudulent withdrawals were not properly charged to her account. Under such circumstances she must be held to have confirmed the accuracy of the balances in question.

This brings us to a consideration of the six withdrawals made by

Alice thereafter. It is evident that the plaintiffs did not rely altogether on the effectiveness of the new arrangement, for Mrs. Connolly continued to hide the book as before, and the fact that it was "hidden in several places" during that period indicates that she soon learned that further withdrawals were being made.

The by-law here involved constitutes a part of the contract between the depositor and the bank, and while it does not require the depositor to use care in keeping his passbook, it does by implication require him to attempt in good faith to carry out the purpose for which the by-law was framed. 3 Williston & Thompson, Contracts, s. 670, p. 1926, and cases cited.

The plaintiffs in the light of their experience must have understood that the mere addition of another name to the passbook was at best a doubtful method of preventing further fraudulent withdrawals, and the expedient of hiding the book had already failed. Under these circumstances, despite the previous negligence of the bank, good faith and fair dealing demanded that they notify the defendant of the true state of affairs or stand the risk of loss. They knew before the joint account was set up that steps must be taken to remedy the situation and they were not entitled to experiment with questionable remedies at the defendant's expense.

The members of the court sitting in the case all concur in the views herein expressed except as to the last six withdrawals. BRANCH and BURQUE, J. J., are of the opinion that the good faith of the plaintiffs in attempting to prevent withdrawals after October 30, 1934, should be submitted to the jury. By reason of the fact that the court is equally divided on this question, the order must be

*New trial as limited by the opinion.*

ALLEN, C. J., was absent.