Hillsborough
No. 92-182

FLEET BANK—N.H.

v.

CHAIN CONSTRUCTION CORP. & a.

December 28, 1993

*Sullivan & Gregg*, P.A., of Nashua (*Valerie A. Walsh*, on the brief and orally), for the plaintiff.

*William E. Aivalikles*, of Nashua, by brief and orally, *pro se*.

BROCK, C.J. Fleet Bank—N.H. (Fleet) appeals from enforcement of an attorney's lien by the Superior Court (*Groff*, J.) ordering Fleet to pay a one-third contingent fee plus costs to Attorney William Aivalikles for his legal services in a collection action. Fleet argues that the trial court erred by: (1) enforcing Attorney Aivalikles' lien for attorney's fees against Fleet in the absence of an attorney-client relationship; (2) enforcing the lien in the absence of a fee agreement between Aivalikles and Fleet and without considering the reasonable value of Aivalikles' services; and (3) granting Aivalikles' motion to strike affidavits submitted with Fleet's motion for reconsideration and denying the motion for reconsideration. We conclude that Aivalikles did not represent Fleet, and that Fleet did not ratify the contingent fee agreement between Aivalikles and others. Consequently, we reverse.

In November 1990, Fleet, as secured creditor of Nightingale Roofing, Inc. (NRI), seized its accounts receivable including the Chain Construction Inc. (Chain) account. In early February 1991, John Nightingale (Nightingale), principal of NRI, recovered files from Fleet for several accounts, including the Chain account, to perfect mechanic's liens. Nightingale hired Aivalikles to do the legal work and signed a one-third contingent fee agreement. Aivalikles immediately notified Fleet's counsel by letter that he had been retained by NRI to perfect the mechanic's liens on a one-third contingent fee basis. Within days, Aivalikles moved for *ex parte* real estate attachments to perfect mechanic's liens for NRI's accounts with Chain, Beaver Construction, and Stabile Construction.

Approximately three weeks after perfecting the mechanic's liens, Aivalikles was told that Fleet did not want him to pursue collection of these accounts. On April 10, 1991, Fleet's counsel sent Aivalikles a letter confirming that Fleet did not want him to continue the collection efforts and asking him to withdraw his appearances in the three cases. Nightingale, on behalf of NRI, sent Aivalikles a letter on April 11 instructing Aivalikles not to turn over the collection cases to Fleet. Again on May 6, Fleet's counsel sent Aivalikles a letter reminding him that he had no authority to handle the collections on behalf of Fleet. Aivalikles appeared at court hearings during this time to defend the attachments for each lien following the direction of his client. Fleet did not enter an appearance in the cases and did

not send a representative to scheduled hearings despite being notified. Aivalikles successfully defended the mechanic's lien for the Chain and Beaver accounts and agreed to the substitution of a bond in the Stabile account.

In May 1991, NRI, Nightingale and Fleet entered into an agreement that settled the dispute concerning NRI's outstanding debt. As part of the agreement, Nightingale deposited $120,000 into an escrow account held by Fleet, and accounts collected, net of costs and attorney's fees generated by the collection process, were credited to the account. In a separate agreement, Fleet agreed that Nightingale could continue collection efforts on several accounts receivable including the Chain account. By early September, Nightingale and Jeff Mintz of Chain had worked out a tentative settlement of the Chain account receivable. The parties dispute Aivalikles' role in the settlement. During the settlement process, Fleet's counsel notified Aivalikles by letter dated October 18, 1991, to "cease any and all further action in regard to the property of Fleet Bank—NH and, more specifically, the present accounts receivable involving Chain Construction, Inc. and H. J. Stabile and Son, Inc." The Chain account was ultimately settled for $45,000, although Fleet collected only $11,800 after payments to NRI's subcontractors. Aivalikles demanded $15,000 as his one-third contingent fee, plus costs of $276.42. Fleet refused to pay the contingent fee and instead offered $3900, which Aivalikles declined.

Aivalikles filed a motion to enforce his attorney's lien, pursuant to RSA 311:13 (1984), to recover a one-third contingent fee plus costs from the amount of the settlement. His claim was based solely on the contingent fee contract, and he did not claim, alternatively, that he was entitled to the reasonable value of his services based on a theory of quantum meruit or unjust enrichment. Following Fleet's objection and a hearing on the matter, the trial court found that "Fleet Bank, by its conduct, ratified the retaining of Attorney Aivalikles as attorney to collect the claims on the basis of a one-third contingent fee." The court ordered Fleet to pay the full fee plus costs. Fleet moved for reconsideration with further support for its objection to Aivalikles' claims including affidavits. Aivalikles objected and moved to strike the affidavits. The court granted Aivalikles' motion to strike the affidavits and denied Fleet's motion for reconsideration.

On appeal, Fleet argues that it was error for the trial court to enforce Aivalikles' attorney's lien in the absence of an attorney-client relationship between Aivalikles and Fleet. Fleet also assigns as error the trial court's decision to enforce the attorney's lien for a

contingent fee when Fleet and Aivalikles did not have a fee agreement. Aivalikles counters that Fleet is bound by the fee agreement due to Fleet's acquiescence and ratification of the agreement.

 We review the trial court's factual findings as a mixed question of fact and law under the clearly erroneous standard. *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 282, 608 A.2d 840, 848 (1992). Findings of fact are clearly erroneous if unsupported by the evidence. *Riverwood Commercial Prop's v. Cole*, 134 N.H. 487, 490, 593 A.2d 1153, 1156 (1991). Legal determinations and the application of law to fact are reviewed independently for plain error. *Great Lakes Aircraft Co. v. City of Claremont supra*. Our inquiry is to determine whether the evidence presented to the trial court reasonably supports the court's findings, and then whether the court's decision is consonant with applicable law.

 In this case, Aivalikles was hired by NRI not Fleet, and the fee agreement for the Chain account was between Aivalikles and NRI. No attorney-client relationship existed between Aivalikles and Fleet. *Cf. McCabe v. Arcidy*, 138 N.H. 20, 635 A.2d 446 (1993) (examining factors constituting attorney-client relationship). The trial court found, however, that Aivalikles' representation was ratified by Fleet's conduct. Representation of a client by an attorney is based upon the law of agency. *Paras v. Portsmouth*, 115 N.H. 63, 67, 335 A.2d 304, 307 (1975). In general, an agency relationship occurs only when one, as principal, gives authority to another to act as agent on the principal's behalf. *ERA Pat Demarais Assoc's v. Alex. Eastman Found.*, 129 N.H. 89, 91, 523 A.2d 74, 75 (1986). Authority to act as an agent may be express or may be implied from actions and conduct. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 348–49, 415 A.2d 671, 673 (1980). For ratification of an act of an agent to occur, there first must have been an attempt to act as agent. *Connolly & a. v. Bank*, 92 N.H. 89, 91, 25 A.2d 412, 414 (1942). Stated another way, "[a]n act, to be susceptible of ratification, must be done at the time on the behalf of the person who afterwards undertakes to ratify it." *Saltmarsh v. Candia*, 51 N.H. 71, 77 (1871).

The trial court found, and the evidence confirms, that Aivalikles acted on behalf of his own client, NRI, not on behalf of Fleet. As long as NRI had an interest in recovering accounts receivable pursuant to the agreement with Fleet, Aivalikles properly acted on behalf of his client to recover payments from outstanding accounts. During this time, Fleet was represented by its own counsel, and other parties recognized that Aivalikles did not represent Fleet. Fleet repeatedly

told Aivalikles to discontinue efforts on the collection cases. Because counsel for Fleet did not enter appearances or substitute Fleet for NRI in the collection actions until October, the cases continued, and one was settled and payment made, with NRI as plaintiff and Aivalikles as attorney of record.

On September 6, during settlement negotiations on the Chain account, Fleet informed John Nightingale that his time for settling accounts for NRI under their agreement had elapsed, and that Fleet would handle the accounts. When the Chain settlement was reached, Fleet asked Aivalikles to file docket markings with the court because he was still the attorney of record in the case. Instead, Aivalikles began efforts to negotiate a different settlement that prompted Fleet's counsel to file an appearance and substitute Fleet as plaintiff. The Chain account was subsequently settled and docket markings were filed on December 30, 1991.

 Aivalikles claims that Fleet acquiesced in and ratified the contingent fee agreement and points to particular conduct by Fleet in support of his theory. First, Aivalikles argues that because Fleet did not object to the contingent fee agreement as soon as he notified them of his arrangement with NRI, Fleet accepted the agreement by acquiescence. Estoppel by inaction occurs only when someone who has knowledge of a situation and a duty to act or disclose information remains silent. *Concrete Constructors, Inc. v. Harry Shapiro & Sons, Inc.*, 121 N.H. 888, 893, 436 A.2d 77, 80 (1981). That is not the case here. Fleet had no duty to decline representation upon notification of a fee arrangement that did not involve Fleet. More importantly, Fleet representatives told Aivalikles within three weeks that he was not authorized to represent Fleet or to pursue the collections cases.

Aivalikles also contends that his fee of one-third plus costs paid from the settlement proceeds recovered in the Beaver account demonstrates ratification of the contingent fee agreement by Fleet. Because of the operation of the escrow agreement between Fleet and NRI and Nightingale, however, Aivalikles was paid by his client, not by Fleet. The agreement provided that NRI and Nightingale would receive credit for amounts recovered on accounts paid within 120 days of the execution of the agreement, net of collection costs including attorney's fees. Therefore, the attorney's fees and costs paid to Aivalikles on the Beaver account came out of NRI's escrowed funds. By mid-September, the 120-day escrow period had elapsed, and any proceeds recovered on the Chain account would then belong solely to Fleet without credit to NRI or Nightingale and without provision for

payment of attorney's fees. As a result, attorney's fees on the Chain account settlement, as ordered by the trial court, would have to be paid from Fleet's funds.

In summary, Aivalikles did not attempt to act as Fleet's attorney; instead, he was representing his own client. As a matter of law, Fleet did not ratify representation by Aivalikles or the contingent fee agreement between Aivalikles and NRI. Consequently, the evidence does not support the trial court's finding of ratification or the order enforcing the fee agreement between Aivalikles and Fleet.

■ In addition, Aivalikles was not entitled to an attorney's lien pursuant to RSA 311:13 (1984). The statute provides for a lien as follows, in pertinent part:

> "From the commencement of an action, . . . in any court . . . the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, upon the judgment decree or other order in his client's favor entered or made in such pro-ceeding, and upon the proceeds derived therefrom; and the lien cannot be affected by any settlement between the par-ties before or after the judgment decree or other order."

RSA 311:13 (1984). Fleet points to the language of the statute that limits an attorney's right to reasonable fees for representation of "a client" and for a result in "his client's" favor. As has been discussed, because Fleet owned the accounts receivable from Chain and was therefore entitled to the proceeds recovered, the settlement was in Fleet's favor, not NRI's favor. If the settlement had occurred during the 120-day escrow period, NRI would have been entitled to a credit against the escrowed funds for the amount recovered net of attorney's fees and costs. That did not occur. Therefore, although money was recovered on the Chain account as contemplated by the contingent fee agreement, NRI had no right to any of the proceeds, nor did the recovery benefit them in any other way. We hold that Aivalikles was not entitled to an attorney's lien on the settlement of the Chain account. The trial court's order that Fleet pay Aivalikles $15,276.42 is reversed. We need not reach the remaining issues raised on appeal.

*Reversed.*

HORTON, J. did not sit; the others concurred.